Estate of Perry A. Yeast, Deceased, John Flath, Executor v. Commissioner. Perry A. Yeast, Jr. v. Commissioner.
Estate of Perry A. Yeast v. Commissioner
Docket Nos. 8912, 8913.
United States Tax Court
1947 Tax Ct. Memo LEXIS 35; 6 T.C.M. (CCH) 1215; T.C.M. (RIA) 47307; November 18, 1947
*35 In 1937, decedent, Perry A. Yeast, purchased a cattle outfit which he sold in 1942 for $99,000. He assigned to Perry A. Yeast, Jr., without consideration, all of the proceeds of the sale except $6,000. Decedent died July 10, 1942. No income tax return for the period January 1 to July 10, 1942 was filed. Held: 1. Decedent's cost basis for the cattle outfit sold, capital expenditures and ordinary and necessary expenditures for the taxable period determined. 2. Imposition of 25 per cent penalty for failure to file return and five per cent negligence penalty for failure to keep proper records sustained. Vahram Chimchirian, 42 B.T.A. 1437, Dec. 11,397; affd., 125 Fed. (2d) 746. 3. Petitioner, Perry A. Yeast, Jr., liable as transferee. Conrad J. Kleinman, Esq., for the petitioners. Byron M. Coon, Esq., for the respondent. LEECH Memorandum Findings of Fact and Opinion LEECH, Judge: These consolidated proceedings involve an income tax deficiency for the period January 1 to July 10, 1942, in the amount of $16,553.60, a 25 per cent penalty of $4,138.40 for failure to file a return and a five per cent negligence penalty of $827.68. The *36 deficiency in income tax and the penalties are asserted against Perry A. Yeast, Sr., decedent, and his estate, and against Perry A. Yeast, Jr., as transferee. The primary issue presented is whether respondent erred in determining that decedent realized a taxable gain of $40,234.65 in the year 1942 from the sale of his cattle outfit. Findings of Fact Petitioner, John Flath, is the duly qualified executor of the estate of Perry A Yeast, deceased, who died July 10, 1942. Petitioner, Perry A. Yeast, Jr., a grandson of the decedent, is the assignee of certain assets of the decedent. No income tax return for the period January 1, 1942 to July 10, 1942 was filed by or on behalf of the decedent. On May 14, 1937, the decedent entered into a written agreement to purchase from A. John Mullen and L. B. Thorne, for a stated consideration of $20,205.20, a cattle outfit, including cattle, horses, equipment, patented land, assignments of leases, certain brands, and water and range rights. Litigation arose between the decedent and Thorne in connection with this agreement which ended in a compromise settlement. The total consideration actually paid by the decedent in 1937 for the cattle outfit *37 was $16,800. The respondent concedes that the decedent is entitled to a basis of $16,800 covering the land, water rights and the cattle included in the original purchase in 1937, in determining the amount of gain realized on the sale of the cattle outfit in the taxable year 1942. During the period from 1938 to July 10, 1942, the decedent expended for capital improvements and additions to his cattle outfit, the following amounts: Fences, $3,400; new tanks, $200; new houses, $600; corrals, $750; young bulls, $700; and improvements and additions to the ranch water supply, including material, labor and board for laborers, $3,837.33, aggregating $9,487.33. In November 1940, the decedent purchased through Ralph Wingfield of Nogales, Arizona, 478 head of Mexican steers for the sum of $10,994. On various dates in 1941, the decedent purchased 1,451 head of steers, branded 7Y, and two horses. These purchases were financed through the Valley National Bank. The loans were guaranteed by Ben Burney, who had an interest in the 7Y steers. There was thus paid for the 7Y steers an aggregate amount of $43,965.08 and, in addition, the freight charges on the cattle of $3,401.44. The total amount *38 paid for the 7Y steers, including freight, was $47,366.52, or an average of $32.64 per head. The bank also paid the sum of $90 for the two horses purchased by the decedent. On April 28, 1942, the decedent sold his cattle outfit to J. M. Smith for a stated consideration of $116,000. The decedent guaranteed the delivery of 2,000 head of cattle and indemnified Smith against claims. The purchase agreement, inter alia, provided that Smith was to be credited with $50 for each head of cattle under 2,000 and was to pay $50 for each head in excess of that number. A complete count of the cattle delivered was not made. On June 20, 1942, the decedent assigned, without consideration, to his grandson, Perry A. Yeast, Jr., transferee herein, the proceeds of the sale of the cattle outfit, less $6,000 which the decedent received as a down payment. On August 20, 1942, Perry A. Yeast, Jr., entered into a supplemental agreement fixing the number of the cattle delivered under the contract of sale at 1,660 head. This reduced the consideration to be paid by Smith from $116,000 to $99,000, a reduction of $17,000. This reduction is an allowance of $50 for each of the 340 head of cattle less than the 2,000 *39 head specified in the original agreement. From the cattle received Smith sold 1,378 head of the 7Y steers, which was all of this brand he received. He also sold 383 head of Bar O steers which also bore the Spear brand. Smith did not know how many Spear and Johnny O cows he received. They were estimated at the time of purchase from 75 to 100 head, including offspring. There were at least 75 Spear and Johnny O cows, which were the holding brands, left from the original purchase by decedent from Mullen and Thorne in 1937. There were very few Lazy H cows, and 10 or 12 bulls in the 75 head of Spear and Johnny O cattle. He also received several horses. It does not affirmatively appear that Smith received any of the Wingfield steers purchased by decedent in November 1940. The total cost of the 1,378 7Y steers to the decedent, including freight, was $44,977.92 (1,378 x $32.64). The interest of Ben Burney in the 7Y steers was $8,384.01. Therefore, the decedent's cost of the 7Y steers was $36,593.91 and his cost of the two horses was $90. During the taxable period the following ordinary and necessary expenditures in connection with the operation of the ranch properties were made either by *40 the decedent or on his behalf. Nealy White salary, $2,600; loss on down payment on cattle deal with Peterson Bros., $2,062.95; Receiver's fee in Thorne suit, $997; E. Elmo Bollinger, attorney's fee, $1,110; Cunningham and Carson, attorneys, $655; Texas Oil Co., $11.66; W. K. Bailey, $70; Dixon Fagerberg, $35; and other ranch operating expenses amounting to $4,393.08; aggregating $11,934.69. As a part of the consideration for the purchase of decedent's cattle outfit, Smith, in 1942, paid the Valley National Bank the sum of $3,980.68, interest charged by the bank on loans made to decedent in connection with cattle purchases and ranch operations. No income tax return having been filed, the respondent determined the decedent's net income as follows: Income
(a) interest
$ 37.50
(b) gain from sale
40,234.65
Total
$40,272.15
Deductions
(c) expenses
4,393.08
Net income
$35,879.07
The respondent, in his deficiency notice, explained how he arrived at the amount of $40,234.65 as gain from the sale, as follows: During the taxable year the decedent sold a ranch and cattle to J. M. Smith for a consideration of $16,000 for the land and range rights and $82,500 for *41 the cattle. The basis of the former was $1,000 and the latter was $49,592.37, resulting in gains of $15,000 and $32,907.63, respectively, a total gain of 47,907.63. Of the total amount of gain, the amount of $7,672.98 was paid to Ben Burney in settlement of his claim in the cattle. Accordingly, a gain from the sale has been determined in the amount of $40,234.65. The total cost to decedent of the cattle outfit, including cattle additions, permanent improvements and capital expenditures was $71,355.25, allocated as follows: Original cost
$16,800.00
Additional cattle
36,593.91
Bulls
700.00
Horses
90.00
Permanent improvements
8,787.33
Ben Burney interest in 7Y steers
8,384.01
$71,355.25 The gain on the sale of the cattle outfit was $27,644.75 ($99,000 - $71,355.25). The inventory and appraisal in the probate proceedings of the Perry A. Yeast estate conducted in the Superior Court of Los Angeles County, California, showed the assets, totaling $2,224.64, consisted of the following items: Cash in bank
$ 30.89
Face value of 3 Canadian bonds
dated 1938, due in 1958, having a
present value of $2,193.75
2,500.00
Opinion The issue presented *42 is one of fact. We are to determine the gain realized by the decedent on the sale of his cattle outfit and the ordinary and necessary expenses made by the decedent in the taxable period. The decedent kept no proper records of his ranch operations. Neither the decedent nor his personal representative filed an income return for the period involved. From available information the respondent determined that decedent had realized an ordinary gain from the sale in the amount of $40,234.65. On brief respondent contends that the gain was not in excess of $17,117.64. In his deficiency notice the respondent fixed the original cost of the capital assets, consisting of 17 1/2 acres of land and water rights at $1,000. On this record there is no basis for making any allocation to the small capital asset involved other than the $1,000, which amount has been allowed in determining the decedent's original cost of the cattle outfit. It is impossible to determine any gain or loss upon the sale of this capital asset and it must necessarily be treated as having sold at its cost of $1,000. The respondent's treatment of the total gain from the sale of the ranch property as ordinary gain is sustained. *43 The only amounts involved which are in controversy relate to the decedent's original cost of the ranch properties; the expenditures in connection with the improvements and additions to the water supply; the cost of additional steers purchased; and the amount of attorneys' fees paid, which are proper deductions for the taxable period. As to each of these items the record is quite unsatisfactory. The Court has labored with patience in its effort to assimilate the evidence with respect to such controversial items. The amounts allocated to each, as specifically set forth in our findings of fact, reflect as close an approximation as we have been able to make. . On the basis of the various amounts allocable to the respective items involved, we have determined the decedent's net adjusted cost of the ranch properties was $71,355.25, and the gain from the sale was $27,644.75. From this latter amount there is to be deducted the ordinary and necessary expenditures in the taxable period of the amount of $11,934.69, leaving a net taxable gain from the sale of and the operation of the ranch properties of $15,710.06. In his deficiency notice the *44 respondent determined the decedent had additional income of interest in the amount of $37.50. This amount is not contested and will be considered in determining the amount of deficiency herein. The record also discloses that as part of the purchase consideration Smith paid, in 1942, to the Valley National Bank interest charges of $3,980.68 on moneys it advanced to the decedent. It does not affirmatively appear whether such interest-paid item is reflected in the $4,393.08 item of operating expenses allowed by the respondent for the taxable period in determining the deficiency. If, upon recomputation under Rule 50, it develops that the interest-paid item of $3,980.68 is not reflected in the $4,393.08 allowed by respondent, the amount of $3,980.68 is allowed as an additional deduction in computing the deficiency. The respondent has assessed a 25 per cent penalty for failure to file an income tax return for the period involved and a five per cent penalty for failure to keep proper records. No return having been filed, the imposition of the 25 per cent penalty is mandatory. Since it appears the decedent did not keep proper records, the imposition of the five per cent penalty is also *45 sustained. ; affd., . Petitioner, Perry A. Yeast, Jr., having received, as assignee, the balance of the proceeds from the sale of the ranch properties without consideration, is liable for the deficiency, including penalties, determined herein. Decisions will be entered under Rule 50.